IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| MICHAEL ALLEN GIBBS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 1:16-cv-01231-STA-jay |
| ) | |
| GEORGIA CROWELL, ) | |
| ) | |
| Respondent. ) | |

ORDER DIRECTING CLERK TO MODIFY RESPONDENT,
DENYING § 2254 PETITION,
DENYING CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Petitioner Michael Allen Gibbs, a Tennessee state prisoner, has filed a *pro se* habeas corpus petition (the "Petition"), pursuant to 28 U.S.C. § 2254. (ECF No. 1.) For the reasons that follow, the Petition is **DENIED**.[1]

**BACKGROUND**

In 2009, a Haywood County, Tennessee, grand jury charged Gibbs and Michael Batchelor with first degree premeditated murder, first degree felony murder, especially aggravated burglary, and attempted especially aggravated robbery, involving victim Daniel Bradford. (ECF No. 16-1 at 5-6.) The defendants were tried separately. *State v. Gibbs*, No. W2012-00800-CCCA-R3-CD,

---

[1] The Clerk is **DIRECTED** to substitute Georgia Crowell for Grady Perry as Respondent, *see* Fed. R. Civ. P. 25(d), and to update Petitioner's address.

2013 WL 3324957, at *1 (Tenn. Crim. App. June 26, 2013), *perm. appeal denied* (Tenn. Nov. 14, 2013).

At Gibbs's jury trial, Vickie Miller, the Defendant's girlfriend at the time of the incident, testified that she and her friend Angela Sangster were at Miller's house on the night of August 28, 2009, along with Gibbs and Batchelor. (ECF No. 16-4 at 49.) "Miller and Sangster announced to the men that they were leaving to purchase alcohol" from the victim, who was "a relative of Miller's who illegally sold liquor out of his home." *Id.* at *1. Both women testified that, after the victim invited them into his home, "two men entered with bandanas covering their faces, instructing the two women to 'get down' and demanding money and liquor from the victim." *Id.* The women, who at that time were "crouched beside the bed," heard "one of the men sa[y] that the victim had a gun, and then [they heard] a gunshot." *Id.* Without checking on the victim, the women left after the men had exited. *Id.* They later returned to the victim's home "to check on [him] and found him dead from a gunshot wound." *Id.* Miller called the police. *Id.*

Brownsville Police Department officers who arrived on the scene discovered that the victim had "a loaded weapon underneath [him], which had not been fired." *Id.* According to the testimony of law enforcement officers, "the house was in disarray and liquor bottles were strewn across the bed." *Id.* The medical examiner testified that the cause of the victim's death was a gunshot wound to the torso. (ECF No. 16-3 at 86.)

"In her initial statement to the officers immediately after the shooting, Miller denied being present during the shooting," but upon questioning, "admitted to being in the room when the shooting occurred." *Id.* at *2. "Although she could not identify either of the two men from their physical appearance, she claimed to recognize the Defendant's voice." *Id.* Sangster, who "was interviewed later," was not "able to identify either" of the men who had entered the victim's home.

2

*Id.* "The Defendant, knowing the police considered him the prime suspect in the victim's murder, turned himself in," but "denied any involvement in the victim's murder." *Id.*

Jerry Wayne Shaw, who had been "incarcerated with the Defendant while he was awaiting trial," testified that Gibbs confessed to being at "the victim's house to rob him," "us[ing] the women to get inside." *Id.* The defendant also told "Shaw that when the victim reached 'for his pants,' he shot him." *Id.* Kristopher White, who had "also [been] incarcerated with the Defendant," testified "that the Defendant admitted to shooting the victim during a robbery." *Id.* "The Defendant told White that Miller and Sangster were suppose to 'handle it' but were unable to go through 'with getting the money,' so he was 'called in on the cue' and shot the victim." *Id.* "Also while incarcerated, the Defendant wrote [a] letter[] to Miller," in which "he asked for Miller's help at the preliminary hearing, noting that Miller and Sangster were the only witnesses against him." *Id.*

The jury acquitted Gibbs on the first degree murder charge, and found him guilty of felony murder, especially aggravated burglary, and attempted especially aggravated robbery. (ECF No. 16-1 at 117-20.) The trial court imposed a sentence of life imprisonment with the possibility of parole for the felony murder conviction, and ten years each on the remaining convictions. *Gibbs*, 2013 WL 3324957, at *2. "The court ordered that the ten-year sentences be served concurrently with one another, but consecutively to the life sentence, for a total effective sentence of life plus ten years." *Id.*

On direct appeal, the Tennessee Court of Criminal Appeals ("TCCA") held that the especially aggravated burglary conviction was "precluded by statute." *Id.* at *5. The court therefore "modified [the conviction] to one for aggravated burglary with imposition of a five-year sentence." *Id.* at *1. The judgments were confirmed in all other respects. *Id.*

3

Petitioner subsequently filed a state *pro se* post-conviction petition (ECF No. 16-12 at 18-32), which was later amended by appointed counsel (*id.* at 48-55). Following an evidentiary hearing, the post-conviction trial court denied relief. (*Id.* at 59-62.) The TCCA affirmed, and the Tennessee Supreme Court denied permission to appeal. *Gibbs v. State*, No. W2015-01808-CCA-R3-PC, 2016 WL 3640373, at *1 (Tenn. Crim. App. June 30, 2016), *perm. appeal denied* (Tenn. Oct. 16, 2016).

On August 22, 2016, Gibbs filed his Petition. He asserts that trial counsel rendered ineffective assistance by failing, at the plea stage, to explain the proofs necessary to convict him of felony murder (Claim 1), and that the trial court erred in failing to give a jury instruction on accomplice testimony (Claim 2). (ECF No. 1 at 4-8.)

## DISCUSSION

Respondent, Georgia Crowell, filed the state-court record (ECF No. 16) and an answer (ECF No. 17) to the Amended Petition. She argues that the claims are without merit. Petitioner did not file a reply, although allowed to do so. (*See* ECF No. 8 at 2.)

### I. Legal Standards

#### A. Federal Habeas Review

The statutory authority for federal courts to issue habeas corpus relief for persons in state custody is provided by § 2254, as amended by the Antiterrorisim and Effective Death Penalty Act ("AEDPA"). *See* 28 U.S.C. § 2254. Under § 2254, habeas relief is available only if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The availability of federal habeas relief is further restricted where the petitioner's claim was "adjudicated on the merits" in the state courts. 28 U.S.C. § 2254(d). In that circumstance, the

federal court may not grant relief unless the state-court decision "'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court; or that it 'involved an unreasonable application of' such law; or that it 'was based on an unreasonable determination of the facts' in light of the record before the state court." *Harrington v. Richter*, 562 U.S. 86, 100 (2011) (quoting 28 U.S.C. § 2254(d)(1)-(2)) (citations omitted)).

A state court's decision is contrary to federal law when it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or when "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at" an "opposite" result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). An unreasonable application of federal law occurs when the state court, having invoked the correct governing legal principle, "unreasonably applies the . . . [principle] to the facts of a prisoner's case." *Id.* at 409.

For purposes of § 2254(d)(2), a state court's "factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The Sixth Circuit construes § 2254(d)(2) in tandem with § 2254(e)(1) to require a presumption that the state court's factual determination is correct in the absence of clear and convincing evidence to the contrary. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). A state court's factual findings are therefore "only unreasonable where they are 'rebutted by clear and convincing evidence and do not have support in the record.'" *Moritz v. Woods*, 692 F. App'x 249, 254 (6th Cir. 2017) (*quoting Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks omitted).

Before a federal court will review the merits of a claim brought under § 2254, the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. §

5

2254(b)(1)(A). To be properly exhausted, a claim must be "fairly presented" through "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999).

### B. Ineffective Assistance of Counsel

A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on such a claim, a petitioner must demonstrate two elements: (1) "that counsel's performance was deficient"; and (2) "that the deficient performance prejudiced the defense." *Id.* at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A court considering a claim of ineffective assistance must apply "a strong presumption" that the attorney's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks and citation omitted).

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693) (citations omitted). Instead, "[c]ounsel's errors must be 'so serious as to deprive

the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

The deference to be accorded a state-court decision under 28 U.S.C. § 2254(d) is magnified when a federal court reviews an ineffective assistance claim: "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 105.

**II.    Claim 1**

Petitioner asserts that his defense attorney rendered ineffective assistance by failing to explain to him the proof necessary to convict him of felony murder, thereby causing him to reject the State's plea offer of twenty-years' imprisonment.[2] The claim is properly before the Court because it was litigated in the post-conviction trial court (ECF No. 16-12 at 60), and raised on appeal from the denial of post-conviction relief (ECF No. 16-16 at 6).

At the post-conviction evidentiary hearing, Gibbs "testified that he met with counsel approximately five times before trial," and "claimed that he did not realize that he was charged with felony murder until 'the end of trial.'" *Gibbs*, 2016 WL 3640373, at *2. He explained that his "understanding [of] felony murder ... is when somebody dies during the commission or

---

[2] In pertinent part, first degree murder in Tennessee is "[a] premeditated and intentional killing of another," or "[a] killing of another committed in the perpetration of or attempt to perpetrate any first degree murder, act of terrorism, arson, rape, robbery, burglary, theft, kidnapping, . . ." Tenn. Code Ann. § 39-13-202(a).

7

perpetration of a crime and so that's what [he] got charged with, but [he] . . . didn't know the difference" because his "lawyer failed to explain[ ] it to" him. *Id.*

Gibbs further "testified that counsel relayed to him a plea offer from the State of twenty years," but he rejected the offer because "he did not understand the felony murder charge because counsel failed to tell him about it." *Id.* at *3. Petitioner insisted that, "'[i]f [he] would have understood the difference between first degree murder and felony murder, [he] would have took [sic] the offer . . . .'" *Id.*

Counsel testified that "[h]e relayed to the petitioner a plea offer from the State for an agreed sentence of twenty-five years," and "explained to the petitioner his sentencing exposure if convicted at trial." *Id.* Counsel "did not recall using the specific terms 'premeditated murder' or 'felony murder,' but he explained to the petitioner, 'These are the facts. This is what it's going to take to show you guilty.'" *Id.* Although he "did not believe that the facts against the petitioner were 'very strong,'" he "told the petitioner to consider the State's offer because they could not predict what the jury would do and because of the sentencing exposure he faced if convicted after a trial." *Id.* He further "told the petitioner that his opinion was that the State's proof was 'weak[,] but ... it's there.'" *Id.*

The post-conviction trial court denied relief orally (ECF No. 16-15 at 53-55), and in a written decision (ECF No. 16-12 at 59-62). The court found that, "[b]ased on petitioner's and [counsel's] testimony, the felony murder rule was explained to petitioner and, based on the transcript of petitioner's pre-trial testimony, petitioner understood the nature of the charges he was facing and knowingly and voluntarily chose to go to trial." (ECF No. 16-12 at 61-62.)

On appeal, Gibbs challenged the lower court's findings, arguing that the record showed that counsel "failed to adequately explain to him that he was charged with two types of murder:

8

intentional and premeditated, and murder committed during the commission of a felony," and "that had counsel fully advised him, he would have accepted the State's plea offer rather than 'go to trial based on an incomplete understanding of his case.'" *Gibbs*, 2016 WL 3640373, at *4. (*See also* ECF No. 16-16 at 12-13.) Applying, *Strickland*'s two-part test to the evidence adduced at the post-conviction hearing, the TCCA concluded that Petitioner had not shown that counsel performed deficiently:

> Trial counsel testified that he relayed the State's plea offer to the petitioner and explained the facts that would be required to establish his guilt. Although counsel did not think the proof against the petitioner was very strong, counsel informed the petitioner that "it's there." Counsel discussed the disparity between the plea offer sentence and the sentencing exposure if convicted after a trial. Counsel believed that he adequately advised the petitioner of the charges against him and potential punishment. Counsel recalled that their discussions were "always in the context of a felony murder." The post-conviction court accredited counsel's testimony and found that the felony murder rule was explained to the petitioner. The petitioner has failed to prove that counsel rendered ineffective assistance.

*Id.* at *5.

*Strickland*'s two-part test applies to a petitioner's claim that counsel's errors caused him to reject the government's plea offer. *Lafler v. Cooper,* 566 U.S. 156, 162-63 (2012). With regard to counsel's performance in the plea context, "[a] criminal defendant has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available." *Thompson v. United States*, 728 F. App'x 527, 533 (6th Cir. 2018) (quoting *Smith v. United States*, 348 F.3d 545, 553 (6th Cir. 2003)). Prejudice is established where there is "a reasonable probability [the defendant] would have accepted the earlier plea offer had [he] been

afforded effective assistance of counsel." *Logan v. United States*, 910 F.3d 864, 869 (6th Cir. 2018) (quoting *Missouri v. Frye*, 566 U.S. 134, 147 (2012)).

Because the TCCA correctly identified the governing legal standards and applied them to the facts of Petitioner's case, its determination that counsel had not rendered ineffective assistance is not "contrary to" controlling Supreme Court law. *See Williams*, 529 U.S. at 406 ("A run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

The decision is also not based on an unreasonable factual determination that counsel "relayed the State's plea offer to the petitioner and explained the facts that would be required to establish his guilt." *Gibbs*, 2016 WL 3640373, at *5. Although Gibbs insisted at the post-conviction hearing that he did not "find out that [he] was facing a felony murder charge" until "the end of trial" (ECF No. 16-15 at 14), the transcript of the criminal trial belies that assertion. Prior to trial, the court asked counsel to examine Gibbs about his rejection of the plea offer so that the court could be satisfied that the rejection was knowing and voluntary. (ECF No. 16-3 at 34.) When counsel asked Gibbs "I also explained to you that if you were convicted for first-degree felony murder you would be looking at a life sentence [,] . . . [r]ight?", Gibbs answered "Yes, sir." (*Id.* at 36.)

Petitioner argues here (ECF No. 1 at 7), as he did to the TCCA (ECF No. 16-16 at 12), that portions of counsel's testimony suggest nevertheless that he was confused about the proofs needed to establish felony murder. He notes that counsel "testified that he advised the Petitioner, '[i]f they find you guilty for the shooting, they are going to find you guilty of the other charges,'" (ECF No. 16-15 at 31), and that he further admitted that he did not provide a "scholarly" explanation of premeditated murder and felony murder (ECF No. 16-15 at 38). But counsel also testified that

10

"the context in which we always talked about the plea was the strength of the proof on the murder and we talked about felony murder," and "[i]t was always in the context of a felony murder." (ECF No. 16-15 at 38-39.) He stated, too, that he explained to his client "[t]hese are the facts. This is what it's going to take to show you guilty." (*Id.* at 32.)

The post-conviction trial court credited counsel's testimony. (ECF No. 16-12 at 61-62.) The court found Gibbs, on the other hand, to be not credible, concluding from his testimony and "the record of the [criminal] case," that his allegation that he did not "understand what he was not pleading to in this case" was "a defense that . . . c[a]me up after the trial." (ECF No. 16-15 at 55.) The TCCA cannot be faulted on habeas review for refusing to disturb those credibility determinations. *See generally Rice v. Collins*, 546 U.S. 333, 341-42 (2006) ("Reasonable minds reviewing the record might disagree about [a witness's] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination.").

Moreover, instead of supplying clear and convincing evidence to undermine the state court finding that counsel advised his client of the facts needed to establish felony murder, Petitioner has only argued an "interpretation[] of conflicting evidence that differ[s] from the interpretation[] of the state court." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000). Such an argument is not sufficient to rebut the presumption of correctness that attaches to the state court's findings. *See id.*

Having found no merit to Petitioner's allegation regarding counsel's advice, the appellate court reasonably concluded that counsel did not render ineffective assistance. Claim 1 is therefore **DENIED**.

### III. Claim 2

On direct appeal, Petitioner argued that "the trial court erred by failing to instruct the jury that Miller and Sangster were accomplices as a matter of law whose testimony must be corroborated," and "[a]lternatively, . . . that, if the evidence was unclear, raising a question of fact, then the jury should have been charged to decide whether the women were accomplices, and if so, whether there was sufficient corroborating evidence." *Gibbs*, 2013 WL 3324957, at *2. (*See also* ECF No. 16-7 at 11-14.) He asserts, here, that the TCCA's decision rejecting his argument is "contrary to the clearly established federal law." (ECF No. 1 at 8.) Respondent argues that the claim is without merit. (ECF No. 17 at 15-19.)

"It is well-established in Tennessee that 'a conviction may not be based solely upon the uncorroborated testimony of an accomplice.'" *Gibbs*, 2013 WL 3324957, at *3 (quoting *State v. Shaw,* 37 S.W.3d 900, 903 (Tenn. 2001)). A trial court must pronounce a witness to be an accomplice as a matter of law where "the evidence is clear and undisputed that [the] witness participated in the crime." *Id.* Where, "however, . . . the evidence is unclear, then the issue of whether a witness is an accomplice is a question of fact for the jury to decide, and if the jury decides that the witness is an accomplice, then it must determine whether there is sufficient evidence corroborating the witness's testimony." *Id.* (citing *State v. Griffis,* 964 S.W.2d 577, 588 (Tenn. Crim. App. 1997)).

In Gibbs's case, the court of appeals determined that, while there was not clear and undisputed evidence that Miller and Sangster were the defendant's accomplices, there was sufficient evidence for the trial court to send the question to the jury and issue the appropriate instructions. *Id.* The TCCA held, however, that the trial court's error was harmless because "[t]he State presented sufficient evidence at trial to corroborate Miller's and Sangster's testimony if the jury found them to be accomplices." *Id.* at * 4.

Although Petitioner objects to the TCCA's ruling on the ground that the absence of an accomplice instruction violated his federal due process rights, he never raised that federal law argument on direct appeal. Instead, he only presented the argument as a matter of state law (*see* ECF No. 16-7 at 11-14), and the TCCA only addressed the issue under state law. Respondent, however, has not argued that Claim 2 is procedurally defaulted. The Court will therefore review the claim on the merits.

The United States Supreme Court's decision in "*Estelle* [*v. McGuire*, 502 U.S. 62 (1991)] made clear that 'the fact that [a jury] instruction was allegedly incorrect under state law is not a basis for habeas relief.'" *Hanna v. Ishee*, 694 F.3d 596, 620 (6th Cir. 2012) (quoting *Estelle*, 502 U.S. at 71-72). Instead, a federal court must determine "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." *Estelle*, 502 U.S. at 72 (quoting *Boyde v. California,* 494 U.S. 370, 380 (1990) (internal quotation marks omitted)). A jury instruction is constitutionally objectionable where it "so infected the entire trial that the resulting conviction violates due process." *Id.* (quoting *Cupp v. Naughten,* 414 U.S. 141, 147 (1973)). Where the challenge is to the absence of a jury instruction, the petitioner's burden is "especially heavy," because "[a]n omission, or an incomplete instruction is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe,* 431 U.S. 145, 155 (1977).

Any argument here that the lack of an accomplice instruction resulted in a denial of due process is without merit. The concern underlying an accomplice instruction is "that an accomplice may have a special interest in testifying, thus casting doubt upon his veracity." *Cool v. United States*, 409 U.S. 100, 103 (1972). Gibbs's defense counsel challenged the truthfulness of the women's testimonies on cross-examination, including by questioning them about their presence at the scene of the crimes and their incentives to lie. (ECF No. 16-4 at 101-32; ECF No. 16-5 at 18-

24.) Moreover, their accounts were substantially corroborated by the confessions Gibbs made to two of his prison-mates. (ECF No. 16-5 at 35-51, 51-79.) Thus, the absence of accomplice instructions did not render the trial fundamentally unfair. *See e.g.*, *Leberry v. Howerton* , 583 F. App'x. 497, 502 (6th Cir. 2014) (absence of jury instruction explaining that accomplice testimony must be corroborated did not "cas[t] doubt on the fairness of [the defendant's] trial" or "undermin[e] confidence in the outcome" because other "corroborating evidence" was submitted to the jury) (quoting *Strickland*, 466 U.S. at 694); *see also generally Wade v. Timmerman-Cooper*, 785 F.3d 1059, 1079 (6th Cir. 2015) ("[A] trial court's failure to give. . . an appropriate limiting instruction will not require reversal where other evidence in the record supports conviction."). Claim 2 is therefore **DENIED**.

For all of these reasons, the Petition is **DENIED**.

## APPEAL ISSUES

A § 2254 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2)-(3). A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it

debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the Petition. Because any appeal by Petitioner does not deserve attention, the Court **DENIES** a certificate of appealability.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *Id.*

In this case, for the same reason it denies a COA, the Court **CERTIFIES**, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is therefore DENIED.[3]

**IT IS SO ORDERED**.

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: June 26, 2019

---

[3] If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.